JUDGE SWAIN

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Southern District of New York

MERCER CAPITAL LTD.

V.

**SUMMONS IN A CIVIL ACTION**

U.S. DRY CLEANING CORPORATION

CASE NUMBER: '08 CIV 5763

TO: (Name and address of Defendant)

U.S. DRY CLEANING CORPORATION
125 E. TAHQUITZ CANYON, SUITE 203
PALM SPRINGS, CA 92262

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

TRENHAFT & ZAKARIN, LLP
347 FIFTH AVENUE, STE 1000
NEW YORK, NY, 10016

an answer to the complaint which is served on you with this summons, within __20__ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON                        JUN 2 6 2008

CLERK                                      DATE

(By) DEPUTY CLERK

AO 440 (Rev. 8/01) Summons in a Civil Action

### RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[(1)] | |
| NAME OF SERVER (PRINT) | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

### STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____
             Date

_____
Signature of Server

_____
Address of Server

---

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MERCER CAPITAL, LTD.,

    Plaintiff,

  against                               Index No.: '08 CIV 5763

U.S. DRY CLEANING CORPORATION        **COMPLAINT**

    Defendant.

---

    Mercer Capital, Ltd. ("Mercer" or "Plaintiff") by and through its attorney Norah Hart, Esq. for the firm of Treuhaft & Zakarin, LLP, as and for its Complaint against defendants U.S. Dry Cleaning Corporation ("U.S. Dry Cleaning" or "Defendant"), alleges as follows:

### Substance of the Action

    1.     This action arises out of breach of contract in connection with a Private Placement Offering of securities in the Defendant corporation, U.S. Dry Cleaning Corporation (U.S. Dry Cleaning), by Placement Agent, Mercer Capital, Ltd. (Mercer), the Plaintiff herein.

    2.     On or about September 1, 2007, Mercer entered into an Engagement Agreement with Defendant U.S. Dry Cleaning (the "Agreement"), whereby Mercer agreed to act as Placement Agent for the offer and sale of convertible notes of U.S. Dry Cleaning. In exchange for Mercer's services, U.S. Dry Cleaning agreed to pay Mercer a thirteen percent (13%) commission on the gross proceeds raised by Mercer, payable in cash on each Closing Date, along with an expense allowance equal to two percent (2%) of the gross proceeds. In addition, U.S. Dry Cleaning agreed to issue Mercer a five-year warrant to purchase shares equal to 15% of the face value of the notes sold in the placement offering.

3.    Importantly, under the Agreement, U.S. Dry Cleaning granted Mercer an exclusive right to sell its equities and debt and agreed to refer all proposals for equity financing in U.S. Dry Cleaning to Mercer.

4.    The Agreement further provided that as part of the consideration to Plaintiff, Defendant would enter into a consulting agreement with Plaintiff for a fee of $60,000.

5.    There is no dispute that Mercer met its obligations under the Agreement.

6.    Defendant, however, withheld a substantial portion of the fees payable to Plaintiff under the Agreement and is thus in material breach of the Agreement. Defendant has failed to pay outstanding amounts owed to Plaintiff despite due demand.

7.    Moreover, Defendant has failed to enter into the bargained-for consulting agreement and has refused to pay any portion of the $60,000 despite due demand.

8.    As of the date of this complaint, five hundred fifty-nine thousand eight hundred and sixty-nine dollars ($559,869) in commission payments and a sixty thousand dollar ($60,000) consulting fee remains due and owing.

9.    In addition, despite due demand, Defendants have failed to issue five-year warrants under the Agreement, and as of the date of this complaint, four hundred eighty-five thousand eight hundred and forty (485,840) warrants, exercisable at $2.50, are owed to Plaintiff.

10.    Moreover, under the Agreement, Defendant agreed to pay Plaintiff nine percent (9%) of the issue price of any notes sold in the placement offering that were converted.

11.    Under the private placement memorandum presented to investors, the notes sold can be converted at a conversion price of $2.50 per share at any time up to the maturity date of the notes (two years after the date of issuance).

2

12. To date, and despite due demand, Plaintiff has received no information on the number of notes converted.

13. Against this factual background, Mercer brings this action for breach of contract and unjust enrichment against Defendant.

## The Parties

14. Mercer is a Texas partnership with its principal place of business located at 40 Wall St, 31st Floor, New York, NY 10005.

15. Mercer is a registered broker/dealer, CRD # 104012.

16. U.S. Dry Cleaning is a Delaware corporation with its principal place of business located at 125 E. Tahquitz Canyon, Suite #203, Palm Springs, CA 92262.

## Jurisdiction and Venue

17. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, in that this is an action between citizens of different States, and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

18. This Court has personal jurisdiction over Defendant in that it regularly conducts business in New York making the assertion of general jurisdiction proper; further, under the Agreement, Defendant agreed to litigate any issues arising under the Agreement in the state or federal courts of New York (and specifically, in the United States District Court for the Southern District).

19. Venue is proper by agreement of the parties and under 28 U.S.C. § 1391 in that Plaintiff is a resident of New York, New York and because a substantial part of the events giving rise to the Plaintiff's claims occurred in New York, New York.

3

## Factual Background

### *The Parties' Agreement*

20.     On September 1, 2007 Mercer and Defendant entered into the Agreement in which Mercer agreed to act as the placement agent for a private placement of a minimum of $2,000,000 and a maximum of up to $20,000,000 of 10% Senior Secured Convertible Notes (the "Offering").

21.     In exchange for Mercer's services, Defendant agreed to pay Mercer a thirteen percent (13%) commission on the gross proceeds raised by Mercer, payable in cash on each Closing Date, along with a non-accountable expense allowance equal to two percent (2%) of the gross proceeds of the Offering.

22.     Defendant also agreed to issue Mercer a five year warrant to purchase such number of shares of common stock equal to fifteen percent (15%) of the fully-diluted number of shares of common stock issuable upon conversion of the notes sold in the Offering at an exercise price equal to the conversion price of the Notes sold in the Offering.

23.     Further, Defendant agreed to enter into a consulting agreement after the last closing under the Offering for a fee not to exceed sixty thousand dollars ($60,000).

24.     Finally, under the Agreement, Defendant agreed to pay Plaintiff nine percent (9%) of the issue price of any notes sold in the Offering that were converted.

25.     Under the private placement memorandum presented to investors, the notes sold in the Offering can be converted at a conversion price of $2.50 per share at any time up to the maturity date of the notes (two years after the date of issuance).

4

26.    Mercer performed all of its obligations under the Agreement without any complaints from U.S. Dry Cleaning.

### *Defendant Breaches the Agreement*

27.    U.S. Dry Cleaning has refused to honor the Agreement, and has refused, despite due demand, to pay the total amounts due and owing to Plaintiff under the Agreement

28.    In conjunction with the Offering, Plaintiff entered into agreements with syndicate broker/dealers. Under the agreements with the syndicates, each syndicate would be entitled to ten percent (10%) of the money raised by those individual firms and Plaintiff would be entitled to the remaining five percent (5%).

29.    The syndicate agreements were not part of the Agreement and were not included in the private placement memorandum provided to potential investors.

30.    Plaintiff has paid the syndicate all amounts owed for money raised by the syndicate in the Offering.

31.    Seven million two hundred eighty-seven thousand and six hundred dollars ($7,287,600) was raised in the Offering.

32.    As such, Plaintiff was entitled to total commissions and expenses of one million ninety-three thousand one hundred and forty ($1,093,140).

33.    Defendant paid five hundred thirty-three thousand two hundred seventy-one dollars ($533,271) of the total amounts dues to Plaintiff, thus leaving an outstanding balance of five hundred fifty-nine thousand eight hundred and sixty-nine dollars ($559,869) due and owing to Plaintiff.

34.    Further, under the terms of the Agreement, Defendant agreed to issue to Plaintiff a five year warrant to purchase such number of shares of common stock equal to fifteen percent

(15%) of the fully-diluted number of shares of common stock issuable upon conversion of the notes sold in the Offering at an exercise price equal to the conversion price of the notes sold in the offering

35. The 10% Senior Secured Convertible Notes were offered and sold at 90% of the principal amount of $2.50 per share. Thus, the total face value of the convertible stock sold in the Offering was $8,097,333.33. As such, a five-year warrant to purchase 485,840 shares of common stock at $2.50 per share is due and owing to Plaintiff.

36. To date, no warrants have been issued to Plaintiff, despite due demand.

37. Under the Agreement, Defendant agreed to negotiate and enter into a consulting agreement with Plaintiff at a price not to exceed sixty thousand dollars ($60,000).

38. As of the date of this Agreement, Defendant has refused to negotiate and enter into the bargained-for consulting agreement.

39. Finally, under the Agreement, Defendant agreed to pay Plaintiff nine percent (9%) of the issue price of any notes sold in the Offering that were converted.

40. Under the private placement memorandum presented to investors, the notes sold in the Offering can be converted at a conversion price of $2.50 per share at any time up to the maturity date of the notes (two years after the date of issuance).

41. To date, and despite due demand, -Plaintiff has received no information on the number of notes converted. Mercer is thus entitled to an accounting of all notes that have been or will be converted and is entitled to 9% of the issue price of the notes that have been or will be converted.

## FIRST CAUSE OF ACTION
*(Breach of Contract)*

42.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 41 of this Complaint as if fully set forth herein.

43.     Plaintiff and Defendant entered into the Agreement whereby, among other things, Mercer acted as the placement agent in the Offering, and in exchange Defendant agreed (1) to pay fifteen percent (15%) of the gross proceeds raised in the Offering, payable in cash on each closing date, (2) to issue to five-year warrants, exercisable at the price of conversion of notes sold in the Offering, to purchase such number of shares of Defendant's common stock equal to fifteen percent (15%) of the fully-diluted number of shares of common stock issuable upon conversion of the Notes sold in the Offering at an exercise price equal to the conversion price of the Notes sold in the Offering ($2.50 per share) and (3) to negotiate and enter into a consulting Agreement with Plaintiff at a price of not more than sixty thousand dollars ($60,000).

44.     Seven million two hundred eighty-seven thousand and six hundred dollars ($7,287,600) was raised in the Offering.

45.     As such, Plaintiff was entitled to total commissions and expenses of one million ninety-three thousand one hundred and forty ($1,093,140).

46.     Defendant paid five hundred thirty-three thousand two hundred seventy-one dollars ($533,271) of the total amounts dues to Plaintiff, thus leaving an outstanding balance of five hundred fifty-nine thousand eight hundred and sixty-nine dollars ($559,869) due and owing to Plaintiff.

47.     The 10% Senior Secured Convertible Notes were offered and sold at 90% of the principal amount of $2.50 per share. Thus, the total face value of the convertible stock sold in

7

the Offering was $8,097,333.33. As such, a five-year warrant to purchase 485,840 shares of common stock at $2.50 per share is due and owing to Plaintiff.

48. Mercer fully performed its obligations under the Agreement.

49. Mercer has attempted to collect the outstanding commissions owed to Mercer by Defendant but has been repeatedly rebuffed.

50. Mercer has demanded the five-year warrant under the terms of the Agreement, but Defendant has refused to issue the same.

51. Finally, under the Agreement, Defendant agreed to pay Plaintiff nine percent (9%) of the issue price of any notes sold in the Offering that were converted.

52. Under the private placement memorandum presented to investors, the notes sold in the Offering can be converted at a conversion price of $2.50 per share at any time up to the maturity date of the notes (two years after the date of issuance).

53. Plaintiff is entitled to 9% of the issue price of any notes sold in the Offering that have been converted on or before the maturity dates of the notes.

54. To date, and despite due demand, Plaintiff has received no information on the number of notes converted.

55. As a direct result of Defendant's breach of contract, Plaintiff has suffered damages in an amount to be determined at trial, but reasonably believed to be in excess of one million five hundred thousand dollars ($1,500,000), plus interest accruing at the legal rate of 9% per annum.

## SECOND CAUSE OF ACTION
### (*Unjust Enrichment*)

56. Plaintiff repeats and realleges the allegations of paragraphs 1 through 55 of this Complaint as if fully set forth herein.

8

57. Plaintiff performed the above-referenced services in good faith.

58. By performing the service as the placement agent, Plaintiff bestowed a benefit upon Defendant.

59. Defendant obtained such benefit without adequately compensating Plaintiff.

60. Defendant reaped such a benefit that equity and good conscience require that restitution be made.

61. Plaintiff has been damaged in an amount to be determined at trial, but reasonably believed to be in excess of one million five hundred thousand dollars ($1,500,000), plus interest accruing at the legal rate of 9% per annum.

### THIRD CAUSE OF ACTION
*(Accounting)*

62. Plaintiff repeats and realleges the allegations of paragraphs 1 through 61 of this Complaint as if fully set forth herein.

63. Under the Agreement, Defendant agreed to pay Plaintiff nine percent (9%) of the issue price of any notes sold in the Offering that were converted.

64. Under the private placement memorandum presented to investors, the notes sold in the Offering can be converted at a conversion price of $2.50 per share at any time up to the maturity date of the notes (two years after the date of issuance).

65. Mercer is entitled to an accounting of all notes that have been or will be converted and is entitled to 9% of the issue price of the notes that have been or will be converted, plus interest at the legal rate of 9% per annum.

**WHEREFORE**, Plaintiff demands the following relief:

9

(a)  On its first cause of action, damages in an amount to be determined at trial, but reasonably believed to be in excess of one million five hundred thousand dollars ($1,500,000);

(b)  On its second cause of action, damages in an amount to be determined at trial, but reasonably believed to be in excess of one million five hundred thousand dollars ($1,500,000);

(c)  On its third cause of action, an accounting of notes sold in the Offering that have been converted on or before the maturity date and 9% of the issue price of the notes that have been or will be converted;

(d)  Interest at the legal rate of 9% per annum;

(e)  Reasonable attorneys' fees and costs; and

(f)  Such other and further relief that this Court deems just and proper.

Dated: New York, New York
       June 25, 2008

By: _____
Norah Hart, ESQ.
TRUEHAFT & ZAKARIN, LLP
Attorneys for Plaintiff
347 5th Ave, Suite #1000
New York, NY 10016

10